*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2014**

In the Matter of the Welfare of: L. S. H., Child

**Filed May 26, 2015
Affirmed
Johnson, Judge**

Mower County District Court
File No. 50-JV-14-1532

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant child)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Aaron Jones, Assistant County Attorney, Austin, Minnesota (for respondent state)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

L.S.H. was adjudicated a juvenile delinquent for possessing a stun gun, marijuana, and drug paraphernalia. He admitted to a deputy sheriff that each of these items, which were found in a vehicle he was driving, belonged to him. L.S.H. argues that the district court erred by denying his motion to suppress the statements he made to the deputy. We

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

conclude that L.S.H. was not in custody when he made the statements to the deputy and, thus, was not entitled to a *Miranda* warning. Therefore, we affirm.

## FACTS

At 12:45 a.m. on May 29, 2014, Deputies Jamie Meyer and Tyler Lynch of the Mower County Sheriff's Office were on patrol in the city of Rose Creek when they observed a vehicle parked in a parking lot with its lights on. Deputy Lynch made a U-turn and pulled up behind the vehicle. The deputies exited the squad car and walked toward the vehicle. As they did so, they detected the smell of burnt marijuana, which intensified as they approached the vehicle.

Deputy Lynch approached the driver's side of the vehicle and identified the driver as L.S.H., who then was 16 years old and three days away from turning 17 years old. Deputy Meyer approached the passengers' side of the vehicle and spoke with the two passengers. As he did so, he noticed a pipe in the center-console area. He asked L.S.H. if it was a marijuana pipe; L.S.H. responded, "yes." Deputy Meyer asked L.S.H. whether the smell of marijuana was coming from the vehicle; L.S.H. responded, "yes."

Deputy Meyer ordered all three occupants out of the vehicle. He searched the vehicle and found 9.7 grams of marijuana, marijuana paraphernalia, and what the deputies believed to be a stun gun. Deputy Lynch asked L.S.H. whether the item was a stun gun; L.S.H. responded, "yes." Deputy Lynch then asked whether the stun gun was his; L.S.H. responded, "yes." Deputy Lynch asked who owned the marijuana and paraphernalia; L.S.H. responded that the items belonged to him. After Deputy Meyer

2

searched the vehicle and secured all items found, the deputies drove L.S.H. home without arresting him and without asking any additional questions.

The state filed a delinquency petition citing L.S.H. with possession of an electronic incapacitation device, in violation of Minn. Stat. § 624.731, subd. 3 (2012); possession of marijuana, in violation of Minn. Stat. § 152.027, subd. 3 (2012); and possession of drug paraphernalia, in violation of Minn. Stat. § 152.092 (2012). In July 2014, L.S.H. moved to suppress the evidence. He argued, among other things, that his statements to Deputy Lynch were obtained in violation of his *Miranda* rights.

In August 2014, the district court held a delinquency hearing. The state called Deputy Lynch and Deputy Meyer as witnesses. After the state rested, the district court heard oral arguments on L.S.H.'s motion to suppress. The district court took the motion under advisement and reserved ruling until the issuance of its order on the merits of the delinquency petition. L.S.H. called his sister as a witness and testified on his own behalf.

Three days later, the district court issued an order denying L.S.H.'s motion to suppress evidence and adjudicating him delinquent on all three charges. In September 2014, L.S.H. moved for reconsideration of the denial of his motion to suppress with respect to the stun gun. The district court sustained its earlier ruling, with some modifications to its memorandum of law. In October 2014, the district court placed L.S.H. on probation for six months. L.S.H. appeals.

## DECISION

L.S.H. argues that the district court erred by denying his motion to suppress the evidence of his statements to the deputies in which he admitted that he owned the stun

3

gun, the marijuana, and the drug paraphernalia. He contends that he was in custody when he made those statements and, thus, should have received a *Miranda* warning.

A statement produced by a custodial interrogation is inadmissible unless the suspect is first advised of certain constitutional rights, including the Fifth Amendment right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *State v. Tibiatowski*, 590 N.W.2d 305, 308 (Minn. 1999). A *Miranda* warning is required only for custodial interrogations, *i.e.,* only for "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; *see also State v. Heden*, 719 N.W.2d 689, 694-95 (Minn. 2006). A person is in custody if there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S. Ct. 1136, 1144 (1984) (quotation omitted). Appellate courts apply an objective standard to the question whether, "based on all the surrounding circumstances, a reasonable person under the circumstances would believe that he or she was in police custody of the degree associated with formal arrest." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010) (quotation omitted). We apply a clear-error standard of review to a district court's findings of fact and a *de novo* standard of review to a district court's determination whether, based on given facts, a person was in custody. *State v. Wiernasz*, 584 N.W.2d 1, 3 (Minn. 1998).

Some circumstances tend to indicate that a suspect is in custody, including the following: that the police interviewed the suspect at the police station, that the officer told

4

the suspect that he or she was the prime suspect, that the officer restrained the suspect's freedom, that the suspect made a significantly incriminating statement, the presence of several officers, and an officer's pointing of a gun at the suspect. *State v. Staats*, 658 N.W.2d 207, 211 (2003). Other circumstances tend to indicate that a suspect is *not* in custody, including the following: that the questioning took place in a "nonthreatening environment," that a law-enforcement officer expressly informed the suspect that he or she was not under arrest, the brevity of questioning, that the suspect left the scene of questioning without hindrance, the suspect's freedom to leave at any time, and the suspect's ability to make phone calls. *Id.* at 212. If the suspect is a juvenile, and if "the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer," a district court should include the suspect's young age as a factor in the totality of the circumstances. *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2406 (2011).

In this case, the district reasoned that L.S.H. was not in custody because he was not arrested or restrained, the questioning was brief and took place in a nonthreatening environment, only two deputies were present for at least some of the statements, and L.S.H. was not questioned in the squad car. L.S.H. contends that the district court erred in its custody analysis because the deputies controlled his movements and "never told him that he was free to leave and not under arrest." But the custody analysis does not depend on "merely whether a reasonable person would believe he or she was not free to leave." *State v. Scruggs*, 822 N.W.2d 631, 637 (Minn. 2012) (quotations omitted). Rather, "an interrogation is custodial if, based on all the surrounding circumstances, a

5

reasonable person would believe he or she was in police custody *to the degree associated with formal arrest*." *Id.* (emphasis added).

The circumstances of this case indicate that L.S.H. was not "in police custody to the degree associated with formal arrest" when he made incriminating statements to Deputy Lynch. *See id.* The deputy's questions were very brief and spontaneous upon the discovery of contraband. *See id.* The questions were asked in a parking lot, which appears to be a "nonthreatening environment." *See Staats*, 658 N.W.2d at 212. Only two officers were present at the time of at least some, if not all, of L.S.H.'s statements to Deputy Lynch. *See id.*; *State v. Rosse*, 478 N.W.2d 482, 486 (Minn. 1991) (concluding that appellant was in custody in part because of presence of seven officers). Neither deputy pointed a firearm at L.S.H. *See Staats*, 658 N.W.2d at 211. Any restraint on L.S.H.'s movement was akin to a traffic stop and not equivalent to a formal arrest. *Rosse*, 478 N.W.2d at 486; *see also Berkemer v. v. McCarty*, 468 U.S. 420, 436-440, 104 S. Ct. 3138, 3148-50 (1984) (distinguishing between routine traffic stop and custodial interrogation requiring *Miranda* warning). Only one factor suggests that L.S.H. was in custody: that he made significantly incriminating statements. *See Staats*, 658 N.W.2d at 211. Nonetheless, based on the totality of the circumstances, the district court properly determined that L.S.H. was not in custody when he made the incriminating statements to Deputy Lynch.

L.S.H. contends further that the district court erred by not considering his age when considering the totality of the circumstances. He notes that this court has identified certain factors as being relevant to the *Miranda* custody analysis for juveniles, including

6

the juvenile's "intelligence, education, experience with the law, the warning given, and the presence or absence of the child's parents." *In re M.A.K.*, 667 N.W.2d 467, 471 (Minn. App. 2003). The district court did not expressly refer to these factors or other age-related factors. Nonetheless, it is apparent that consideration of age-related factors would not change the outcome. *See State v. Clark*, 738 N.W.2d 316, 346-48 & n.15 (Minn. 2007) (acknowledging that district court did not apply proper analysis but affirming because defendant failed to show prejudice). Furthermore, the United States Supreme Court has held that age-related factors are less significant if a suspect is closer to the age of majority. *See J.D.B.*, 131 S. Ct. at 2406. In this case, L.S.H. is on the older end of the juvenile spectrum; he was 16 years old on the day in question and only three days away from his seventeenth birthday.

In any event, the cases on which L.S.H. relies are distinguishable, both because they involve younger juveniles and because the circumstances of their detentions were more similar to a formal arrest. For example, in *M.A.K.*, a 14-year-old boy was removed from class and questioned by police in a school's police liaison office. 667 N.W.2d at 472. In *In re G.S.P.*, 610 N.W.2d 651 (Minn. App. 2000), a 12-year-old boy was questioned in a school principal's office, was told by the assistant principal that he had no choice but to answer the questions, was asked "repeatedly" if he possessed the prohibited item at issue, and was told about the criminal statute at issue. *Id.* at 657-58. And in *In re D.S.M.*, 710 N.W.2d 795 (Minn. App. 2006), a 14-year-old boy was questioned at the police station in an "accusatory" and "coercive" way that appears to be more extensive than the questioning in this case. *Id.* at 798. In stark contrast, L.S.H. was older than

7

those children by a few years, was old enough to be licensed to drive, and was old enough to be away from home without adult supervision after midnight. Given the circumstances of this case, the caselaw emphasizing age-related factors does not lead to the conclusion that L.S.H. could reasonably believe that he "was in police custody to the degree associated with formal arrest." *Scruggs*, 822 N.W.2d at 637.

In sum, the district court did not err by denying L.S.H.'s motion to suppress the statements he made to the deputies.

**Affirmed.**